**KEARNEY COMMERCIAL BANK,**
Plaintiff-Appellant,

v.

Madonna R. DEITER (Administratrix of the Estate of Lewis L. Deiter, deceased), and First National Bank of Liberty, Missouri, Defendants-Respondents.

No. 24528.

Kansas City Court of Appeals.

Missouri.

Oct. 3, 1966.

Sevier & Turnage, Liberty, for appellant.

James, McFarland & Trimble, by James G. Trimble, North Kansas City, for Madonna R. Deiter.

CROSS, Presiding Judge.

Plaintiff Kearney Commercial Bank appeals from a judgment of the circuit court dismissing its petition to invoke the equitable remedy of interpleader by requiring defendant Madonna R. Deiter, Administratrix of the Estate of Lewis L. Deiter, deceased, and defendant First National Bank of Liberty, Missouri, to interplead and litigate their conflicting claims to the sum of $9,700.80, held by plaintiff bank as a deposit to the account of defendant administratrix. The controversy arose upon facts here set out.

Lewis L. Deiter, resident of Clay County, Missouri, died on July 17, 1965, owning property consisting principally of 68 head of cattle and a bank account inventoried as in the amount of $1,977.73, on deposit with defendant First National Bank of Liberty, Missouri, hereinafter sometimes designated as "First National". Administration of the estate was duly instituted by application for and issuance of letters of administration to decedent's daughter, Madonna

R. Deiter. The 68 head of cattle were sold at private sale (subsequently approved by the probate court) for the sum of $9,468.92, which was deposited in plaintiff bank (sometimes hereinafter referred to as "Kearney Commercial") to the account of Madonna R. Deiter, as administratrix of her deceased father's estate.

Thereafter First National informed Kearney Commercial by letters that it (First National) had a chattel mortgage on certain cattle owned by deceased; that such mortgaged cattle had been sold without mortgagor's consent; that the sale proceeds were on deposit in Kearney Commercial to the credit of Madonna R. Deiter, as administratrix; and, that First National considered itself to have an equitable lien on the deposit and claimed to be the owner thereof. After receipt of this information, Kearney Commercial refused payment of a check drawn by the administratrix on the estate account in the amount of $2,300.00 payable to her mother, Mrs. Lewis L. (Charlotte C.) Deiter, widow of decedent, as and for one year's support allowance previously ordered by the probate court.

Following this refusal to honor her check drawn upon the estate account, the administratrix instituted a proceeding in the probate court to discover assets in the hands of Kearney Commercial under provisions of Section 473.340 V.A.M.S. That proceeding progressed to a hearing in which appearances were made on behalf of Kearney Commercial, the administratrix, and First National, by their respective counsel. Testimony of one witness was heard—that of Cecil Turnage, Kearney Commercial's cashier. He was preliminarily examined by counsel for administratrix and cross examined by counsel for Kearney Commercial and also by counsel for First National. The substance of the cashier's testimony was that there was "an obligation on behalf of the Kearney Commercial Bank to a depositor under the name of Madonna R. Deiter, Administratrix of the Estate of Lewis L. Deiter, deceased" in the amount of

$9,700.80; that Kearney Commercial had refused to pay funds to Charlotte Deiter, widow of decedent, for one year's living allowance on the administratrix's check in the amount of $2300.00 and was still refusing to pay the check because the First National was making claim to the deposit fund as proceeds of a sale of some cattle on which it held a chattel mortgage, by reason of which it had a superior lien on the administratrix's account; that except for such claim by First National, Kearney Commercial would have paid the $2300.00 check drawn by administratrix; and, further, that Kearney Commercial had no claim of ownership of any amount of the account.

At the conclusion of the cashier's testimony, counsel for all three parties addressed the court. Counsel for the administratrix moved for summary judgment "in order to get that money paid to the administratrix". Counsel for Kearney Commercial informed the court that his client was in the position of a stakeholder, had no claim to the funds, and had no objection to paying the money to "somebody", but was faced with the claim of the First National and didn't want to have to pay it a second time. Counsel for First National argued to the court against the propriety of the proceeding, admitted that First National's claim gave rise to the controversy, agreed that Kearney Commercial was a mere stakeholder, and requested specific relief from the court as follows:

"Now, if the court does entertain or make a summary judgment at this time in connection with this matter, I would like to have the right to insist on another bond being submitted; because I question the validity of that particular bond that's in the estate, right now. I don't recall how much it's for".

At the conclusion of the hearing the probate court rendered no decision but took the matter under advisement pending receipt of answers to interrogatories the administratrix had propounded to Kearney Commercial.

Two days after the hearing above noted Kearney Commercial commenced this suit in circuit court by filing its "petition in interpleader" said by its author to be "in conventional form". The pleading contains allegations of fact substantially as heretofore set out in this opinion, indicating that each of the within named defendants claims to be the owner of the $9,700.80 bank deposit held by plaintiff bank. The petition further alleges that plaintiff is in doubt as to which claimant is entitled to the fund, that plaintiff is ready and willing to pay it over to the person lawfully entitled thereto, that each of the defendants has threatened suit against plaintiff to recover the sum in dispute, and that plaintiff has no adequate remedy at law "and may be subjected to multiple liability for a single liability". The prayer of the petition is that plaintiff be allowed to bring the $9,700.80 into court and that the defendant administratrix and the defendant First National be required to answer and interplead with each other to determine who is entitled to receive payment of the account held by plaintiff.

Subsequent to service of summons upon it as a party defendant and filing answer in the interpleader action, First National submitted its claim to the Probate Court of Clay County by filing therein its demand for payment of promissory notes executed by decedent aggregating $10,369.15, described as "secured by a chattel mortgage executed by the deceased". The demand states that "all cash assets shown in the inventory and appraisement in said estate as being received from the sale of livestock are subject to the lien of said chattel mortgage inasmuch as said proceeds were received from the sale of livestock included under the terms and provisions of said chattel mortgage". An additional amount of $1777.73 was claimed in the event offset credits on certain of the notes taken from decedent's account in the stated amount should be disallowed.

Defendant administratrix filed a motion to dismiss plaintiff's petition in interpleader on alleged grounds (1) that a prior action was pending in the probate court between the same parties for the same cause and (2) that the circuit court was without jurisdiction because the probate court had exclusive original jurisdiction of probate matters and afforded plaintiff an adequate remedy for its relief under Section 473.357 V.A.M.S. Defendant First National in its answer admitted the allegations of plaintiff's petition, alleged affirmatively that it was entitled to the funds and "joined with plaintiff in praying that the court order both defendants to file their respective interpleas asserting their respective claims to the funds on deposit".

One hearing was held by the circuit court in the interpleader suit, in which all three parties appeared, defendant administratrix's motion to dismiss was submitted to the court and documentary exhibits were identified and admitted as evidence in the case. These exhibits include (1) the entire probate court file in Case No. 5139, same being the administration proceedings in the estate of Lewis R. Deiter, (2) transcript of the hearing held pursuant to the administratrix's discovery proceeding against Kearney Commercial (previously referred to) and (3) transcript of a hearing pursuant to discovery proceeding instituted in probate court by the administratrix against First National involving a bank deposit controversy (which has no material bearing on the issues in the instant case). No oral testimony was heard. On a day subsequent to the hearing the circuit court entered a judgment of dismissal by sustaining "defendant Madonna R. Deiter's motion to dismiss".

Appellant's brief presents one point—that the dismissal of its petition constituted error. To support this contention appellant argues (1) that there was no pending action in the probate court between the same parties for the same cause, and (2) that "the exclusive jurisdiction of an interpleader suit is in the Circuit Court, and—the subject of the conflicting claims being

assets of an estate pending in the Probate Court does not rob the Circuit Court of its jurisdiction in these cases".

It is argued on behalf of responding defendant Deiter that the dismissal of plaintiff's petition was proper because "another action was already pending in the probate court between the same parties in the same cause as the cause involved in this action". This she identified as the discovery proceeding against Kearney Commercial and argues that First National entered its appearance therein as a claimant to the identical deposit fund in the hands of Kearney Commercial by reason of its attorney having participated in the discovery hearing. As will later appear it will not be necessary that we decide this very close question. Additionally administratrix suggests the availability of certain statutory remedies assertable in probate court by Kearney Commercial and First National. Respondent First National has filed no briefs.

■ Since this appeal is from a judgment rendered in an equity action it is our duty to try the case de novo, reach our own conclusions upon review of both the law and the evidence without regard to the trial court's rulings and give such judgment as the trial court should have given. Civil Rule 73.01(d) V.A.M.R. See Commonwealth Trust Co. v. DuMontimer et al., 193 Mo.App. 290, 183 S.W. 1137, where the court stated: "The cause, being on interpleader, was tried as in equity. Hence the whole case, both on the law and the evidence is open to us".

■ Kearney Commercial's petition pleads for relief under the ancient remedy of interpleader as recognized in equity and existing independent of Section 507.060 V.A.M.S. which supplements the remedy in question. The cited statute does not create, destroy or change the nature of equitable interpleader, but merely broadens the scope of that remedy and is purely a procedural statute. Plaza Express Co. v. Galloway, 365 Mo. 166, 280 S.W.2d 17. The remedy

is defined as follows in Baden Bank of St. Louis v. Trapp, Mo.App., 180 S.W.2d 755: "A suit in interpleader is an equitable remedy, which, generally speaking, may be resorted to where two or more persons severally claim the same debt, duty, or thing from the complainant under different titles or in different interests, and the complainant, claiming no title or interest for himself, and not knowing to which of the claimants he should render the debt or duty or deliver the property, is either molested by an action brought against him, or else is in fear that he may suffer injury from the conflicting claims advanced against him unless the claimants are all brought into court and required to interplead their several claims so that the court, with all the claimants before it, may adjudicate their respective claims and determine which of them has the right to be awarded the matter or thing in controversy. W. A. Ross Const. Co. v. Chiles, 344 Mo. 1084, 130 S.W.2d 524; Prudential Ins. Co. of America v. Sheehan, Mo.App., 100 S.W.2d 57".

■ It is well established law that interpleader in equity is not maintainable if another adequate remedy is available, W. A. Ross Const. Co. v. Chiles, supra; where there is a proceeding pending against the complainant in which he may have complete relief with full protection to himself by asking that other claimants be made parties to the end that their respective claims may be adjudicated; or, where the holder of the fund or property claimed has a complete and adequate remedy at law which will afford him full relief. Baden Bank of St. Louis v. Trapp, Mo.App., 180 S.W.2d 755. These principles observed by Missouri courts are consistent with the general rule stated in 30 Am.Jur., Interpleader, Sec. 8, page 486, quoted as follows: "One of the general rules regulating the subject of interpleader is that the plaintiff must have no other means of protecting himself from litigation in which he has no interest. He is not entitled to the equitable remedy of interpleader if he has a plain, speedy and adequate remedy at law * * *".

The case of Baden Bank of St. Louis v. Trapp, supra, has material bearing on the question whether Kearney Commercial was entitled to maintain its interpleader in equity. The cited case was brought in circuit court by the Baden Bank as an interpleader action in equity for the purpose of having an adjudication of conflicting claims as between two of its depositors on the one hand, and a garnishing creditor on the other, with respect to the ownership of certain money on deposit in the bank. The circuit court overruled demurrers to the bank's petition and required defendants to interplead. On appeal the question was tendered whether the bank was entitled to invoke the jurisdiction of equity by an independent suit in interpleader or whether its remedy was "one in the nature of equitable relief by asking that the claimants be required to interplead in the garnishment proceeding". The latter alternative was a procedure available under Section 1568 R.S.Mo. 1939 (present Section 525.090 V.A.M.S.), which provided that "Any person claiming property, money, effects or credits attached in the hands of a garnishee, may interplead in the cause, as provided by law in attachment cases; but no judgment shall be rendered against the garnishee in whose hands the same may be, until the interplea shall be determined".

In considering the question whether equitable interpleader was available to complainant Baden Bank, the court significantly stated: "And of course, even though the facts may be such as to give rise to the right of interpleader, the complainant is nevertheless not entitled to maintain an independent suit in interpleader *where there is a proceeding pending against him in which he may have complete relief with full protection to himself by asking that all the claimants be made parties to the end that their respective claims may be adjudicated*". (Our italics). It was pointed out by the court that the plaintiff bank could secure complete relief by utilizing the quoted statutory provision and asking that the depositors (as third parties) be required to interplead in the garnishment proceedings to

which it and the garnishing creditor were already parties. Accordingly, the court held that the bank's petition failed to state a cause of action for an independent suit in equity and reversed the trial court's judgment with directions to sustain the demurrers and dismiss the petition.

The instant case bears close analogy to the Baden case. At the time Kearney Commercial filed its petition for interpleader in equity there was a proceeding pending against it in which it might have complete relief with full protection to itself by asking that all claimants be made parties to the end that their respective claims might be adjudicated. We refer to the discovery proceeding instituted by the administratrix against Kearney Commercial. There can be no doubt that the proceeding involved the idential fund as is involved in the instant interpleader action, that at least two of the parties were identical (the administratrix as named depositor and Kearney Commercial as the depository bank), that the proceeding was duly commenced, and that the probate court acquired full jurisdiction over the cause and the original parties *prior to the filing of the interpleader suit in circuit court,* and that a conflicting claim was asserted by a third party—First National. Thus we find in this case an essentially identical alignment of parties with conflicting claims to a deposit of funds held by a disinterested bank, as existed in the Baden Bank case when the plaintiff in that suit filed its petition for interpleader in equity. Likewise, in this case, as in Baden, *there is a statute available to Kearney Commercial affording an adequate remedy* by which it could secure complete relief with full protection to itself in the "proceeding pending—" by asking that all the claimants be made parties to the end that their respective claims may be adjudicated. Section 362.360 V.A.M.S. entitled, "Interpleader in certain actions—funds may remain in bank—Costs", provides, in part, as follows:

"In all actions against any bank to recover for moneys on deposit therewith, if there be any person or persons, not

parties to the action, who claim the same fund, the court in which the action is pending may, on the petition of such bank, and upon eight days' notice to the plaintiff and such claimants, and without proof as to the merits of the claim, make an order amending the proceeding in the action by making such claimants parties defendants thereto; and the court shall thereupon proceed to determine the rights and interests of the several parties to the action in and to such funds. The remedy provided in this section shall be in addition to and not exclusive of remedies now or hereafter existing".

■ By the express terms of Section 362.360 its provisions apply to "all actions". The discovery proceeding against Kearney Commercial is "an action", inasmuch as Missouri courts have consistently held that a discovery proceeding in probate court, whether instituted by the personal representative or an interested person against some other person on behalf of the estate or by an interested person against the administrator or executor, is a *suit or action within the meaning of the law*. In re Clinton's Estate, 223 Mo. 371, 123 S.W. 1; Sexton v. Sexton, 295 Mo. 134, 243 S.W. 315; Davis v. Johnson, 332 Mo. 417, 58 S.W.2d 746. In such a proceeding the property rights of the parties are determined and "the action is one at law". In re Petersen's Estate, Mo.Sup., 295 S.W.2d 144 and cases cited. Also see: Courier v. Scott, Mo.Sup., 336 S.W.2d 375; State ex rel. North St. Louis Trust Co. v. Wolfe, 343 Mo. 580, 122 S.W.2d 909; In re Huffman's Estate, 132 Mo.App. 44, 111 S.W. 848. In Edlen v. Tweed, Mo.App., 295 S.W.2d 397, the court stated that "The claim of an administrator or executor under § 462.400 (present Section 473.340) is substantially the same as a cause of action in trover or conversion. State ex rel. Lipic v. Flynn, 358 Mo. 429, 215 S.W.2d 446". In Eckerle v. Wood, 95 Mo.App. 378, 69 S.W. 45, after a thorough review of the cases the court held that a proceeding to discover assets of an estate is a *"suit pending"* within the meaning of a

general statute authorizing the taking of depositions in a "suit pending in any court in this state". In so holding the court said: "In the case at bar the statutes (sections 74–78, Rev.St.1899) provide a distinct proceeding for the disclosure of assets of an estate in certain circumstances. The proceeding is special, no doubt; but it comprehends all the essential elements of a suit. It presents a moving party, an adverse party, and it requires a decision by a tribunal invested with jurisdiction to determine it. Tygard v. Falor, 163 Mo. 234, 63 S.W. 672. The proceeding is one wherein a trial by jury is expressly authorized. A grant of power implies a grant of all incidental authority necessary to make the principal grant effective. McLorinan v. Ryno, 49 N.J.L. 603, 10 A. 189. A trial by jury of an issue of fact may require the production of testimony by deposition. The provision made for such a trial implies that the legislature regarded the inquiry as in the nature of an action. We consider that it is within the scope of the intention of the legislature in the use of the words 'suit pending' in section 2877, Rev.St. 1899". Although the Code of Civil Procedure does not govern procedure in the probate court, it is recognized and stated by Maus, in 3 Probate Law and Practice, Sec. 511, page 512, that "general statutes pertaining to courts of record, not in conflict with the Probate Code, are applicable to probate courts". Citing Eckerle v. Wood, supra.

■ All the foregoing leads to our conclusion that the discovery proceeding instituted in the probate court by administratrix Deiter against Kearney Commercial is "an action against a bank to recover for monies on deposit therewith" within the meaning of Section 362.360, and that the cited statute is fully applicable to that proceeding as such an "action". The provisions of Section 362.360 afforded Kearney Commercial a full and complete remedy at law, partaking of the same nature as interpleader in equity, summarily available by the simple act of filing a petition asking that First National be made a party to the

proceeding in probate court to which it and the administratrix were already parties. Having such remedy available, and the same being adequate to protect its interests in all respects, it follows that Kearney Commercial was not entitled to maintain its separate suit in equity for interpleader and the dismissal of that action by the circuit court was in the proper exercise of its jurisdiction in equity. We so rule.

There is no reason for this court to rule otherwise on the ground that a determination of the interests of the conflicting claimants by the probate court in Kearney Commercial's discovery proceeding under provisions of Section 362.360 might involve equitable issues or require the exercise of equitable jurisdiction. It can be confidently stated that after many years of confusion and contradiction in court opinions relative to the extent of equitable authority possessed by probate courts, that question has been settled by the later and controlling decisions of the Supreme Court. In the case, In re Myers' Estate, Mo.Sup., 376 S.W.2d 219, decided nine years after passage of the 1955 Probate Code, the Supreme Court for the first time construed the meaning of that part of Section 472.030 V.A.M.S. which states that the probate court shall have "the same * * * equitable powers to effectuate its jurisdiction and to enforce its orders, judgments and decrees in probate matters as the circuit court has in other matters". In the opinion adopted by the court, en banc, Judge Holman commented that the foregoing language used by the legislature is clear and that "the legislature meant just what it said". The opinion reasons: "The circuit court certainly has complete and unrestricted equitable powers in 'other matters', i. e., matters properly cognizable before that court. We therefore must conclude that it was intended that this section would give probate courts complete and un-

restricted equitable powers 'in probate matters.'" As to what are probate matters, see First National Bank of Kansas City v. Mercantile Bank & Trust Co., Mo.Sup., 376 S.W.2d 164, where it is suggested that "the collection and marshaling of assets, including disputed claims as to what is or is not an asset, the allowance of claims, or demands and the proper distribution of the remainder of the estate to the persons entitled thereto" are examples of matters pertaining to probate business. Also, as noted in In re Myers' Estate, supra, l. c. 376 S.W.2d 224, "It is suggested by Judge Welch that 'a controversy which necessarily is involved in the winding up of the affairs of a decedent, is a matter pertaining to probate business * * *.' 1963 Wash.U.L.Qr. 346".

In our opinion the subjects of controversy in this case—involving as they do, questions whether the disputed fund is an asset of the estate, whether the administratrix shall retain it as such, or whether the First National shall secure the fund into its own possession under its claim of priority by reason of mortgage security—are "probate matters" of classic purity. Hence they fall within the category of "matters" in which probate courts are vested with "complete and unrestricted equitable powers", including authority to entertain the statutory interpleader action allowed by Section 362.360, although its determination to judgment may require equitable procedures and the application of equitable principles.

The results reached in this case are consistent with the intended purposes of the 1955 Probate Code—that is, the administration of decedents' estates quickly, economically and with finality in one tribunal, without remitting litigants to the delays and expense of proceedings in other courts.[1]

In our consideration of the issues we have carefully examined all cases relied upon by

1. See 23 Mo.L.Rev. 113–156, April 1958, Constitutionality of the Broadened Powers of the Probate Court in Missouri Under the New Code, by Welch, Oliver and Summers;

Equity Jurisdiction Under the New Code, 4 Wash.U.L.Qr. 309, Dec. 1961, by Judge Welch, and supplement thereto in 1963 Wash.U.L.Qr. 338.

appellant, but we find nothing of pertinent substance therein to warrant different conclusions than those we have expressed.

Accordingly, the judgment of dismissal is affirmed.

All concur.